# United States Bankruptcy Appellate Panel

## FOR THE EIGHTH CIRCUIT

No. 06-6042 MN

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| David P. Nelson, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Jack Lindau, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellee, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| David P. Nelson, | * | |
| | * | |
| Defendant - Appellant. | * | |

Submitted: November 2, 2006
Filed: November 24, 2006

Before SCHERMER, FEDERMAN, and MCDONALD, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

David P. Nelson ("Debtor") appeals the bankruptcy court's order and judgment excepting from discharge his obligation to Jack Lindau ("Creditor") pursuant to 11 U.S.C. § 523(a)(2)(A). We have jurisdiction over this appeal from the final order

of the bankruptcy court.  *See* 28 U.S.C. § 158(b).  For the reasons set forth below, we reverse.

## ISSUE

The issue on appeal is whether the court erred in finding that the Creditor established by a preponderance of evidence all elements necessary to except from discharge as fraudulent under Section 532(a)(2)(A) of the Bankruptcy Code a debt arising from a failed sale of a business.  We conclude that the bankruptcy court erred in finding fraud.[1]

## MOTION TO STRIKE CERTAIN EVIDENCE ON APPEAL

As a preliminary matter, we must address the Creditor's motion to strike certain new evidence presented by the Debtor on appeal.  The Debtor attached to his brief on appeal his own affidavit as well as a copy of a post-trial letter from his trial attorney to the Debtor.  The record on appeal is limited to items which were presented to the trial court.  *See* Fed. R. Bankr. P. 8006.  Items included in an appendix to a brief are likewise limited to items from the trial court's docket as well as any transcripts from the court below.  *See* Fed. R. Bankr. P. 8009.  An appellate court sits in review of a trial court.  As such, it can only consider the evidence presented to the trial court.  Otherwise, the appellate court exceeds its role as a reviewer of the proceedings below.  Accordingly, the Creditor's motion to strike is granted.  The affidavit and letter attached to the Debtor's brief will not be and have not been considered.

## BACKGROUND

---

[1] The Debtor also complains that his trial counsel did not call a particular witness nor offer certain evidence at trial.  This is not a proper issue on appeal of a civil judgment of non-dischargeability.

2

In 2004, the Creditor was interested in operating his own business. The Creditor had known the Debtor for several years and was aware that he owned and operated a retail business known as Mr. Nice Guy which sold tobacco, novelties, and drug paraphernalia. The Creditor approached the Debtor to discuss his desire to operate his own business. The Debtor told the Creditor that he was interested in getting out of the retail business. The Debtor offered to sell the business to the Creditor for $40,000. The Creditor agreed to purchase the store for $40,000 and attempted to obtain the necessary financing. The Creditor was unable to obtain financing to purchase the store and informed the Debtor he could not purchase the store for $40,000.

The parties entered into a new agreement whereby the Creditor agreed to purchase the business from the Debtor for $70,000 payable with a $15,000 down payment, followed by fifteen monthly payments of $3,000, and a final balloon payment of $10,000. The Debtor spent a week and a half conducting an inventory of the store. After completing the inventory, the Creditor gave the Debtor $7,000 cash toward the down payment. This transaction was documented with a statement written by the Creditor stating, "[Debtor], here is $7,000 as earnest money toward the purchase of Mr. Nice Guy. I hope this shows you how serious I am." The document was signed by the Creditor and the Debtor and dated May 11, 2004. The Creditor also gave the Debtor two certified checks each in the amount of $4,000 which were dated May 14, 2004.

After receiving the $15,000 down payment, the Debtor turned over the day-to-day operations of the business to the Creditor and eventually left town. While the Creditor operated the store, he rearranged the inventory and changed the displays.

At some point during May, 2004, the Creditor and the Debtor met with a lawyer selected by the Debtor to draft the paperwork associated with the sale of the business. The parties agreed to a closing date of June 1, 2004.

While the Creditor was operating the store, but before a sale agreement was signed or a closing occurred, the Debtor called the Creditor from another county within the state and asked the Creditor to take $1,200 out of the business because the Debtor was in jail and needed bail money. The Creditor complied with the request and gave $1,200 cash to a friend of the Debtor's to deliver to the jail.

The parties never returned to the lawyer's office, never signed a purchase agreement, and never closed the deal. Instead, the Debtor refused to complete the sale. In June, 2004, the Creditor returned the operation of the store to the Debtor at the Debtor's request. The Creditor wrote a statement that said, "I, [Creditor], gave [Debtor] 15,000 for earnest money in purchasing Mr. Nice Guy smoke shop. We did not sell the shop, so this is for the return of payment of $15,000." The document was signed by the Creditor and the Debtor and dated June 24, 2004. The parties agreed the Debtor would repay the $15,000 at the rate of $1,000 per week. The Debtor never made any payments to the Creditor.

The Debtor eventually filed a petition for bankruptcy relief. The Creditor filed a complaint seeking to have the $15,000 debt excepted from discharge as a debt for money obtained by fraud under Section 523(a)(2)(A) of the Bankruptcy Code. The matter was tried and, at the conclusion of the evidence, the judge stated that the matter came down to a question of credibility and that he believed the Debtor was not credible and never intended to sell the business to the Creditor. The court ruled orally in favor of the Creditor excepting the $15,000 debt from discharge as having been incurred through fraudulent inducement. The court thereafter entered an order and a judgment in favor of the Creditor excepting the $15,000 debt from discharge.

4

The Debtor filed a motion to amend, to make additional findings of fact and alter and amend the judgment, or for a new trial. The court denied the post-trial motion and the Debtor filed this appeal.[2]

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997); *The Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999); *Tri-County Credit Union v. Leuang (In re Leuang)*, 211 B.R. 908, 909 (8th Cir. B.A.P. 1997). The determination of whether a requisite element of a claim under Section 523(a)(2)(A) is present is a factual determination which is reviewed for clear error. *Pontow*, 111 F.3d at 609; *Moen*, 238 B.R. at 790. A finding is clearly erroneous when although there is evidence to support the finding, on review of the entire evidence the appellate court is left with the definite and firm conviction that a mistake has been made. *Moen*, 238 B.R. at 790; *Leuang*,

---

[2] The Debtor filed the post-trial motion within ten days after entry of the judgment excepting the debt from discharge. The order denying the post-trial motion was entered on June 8, 2006. The Debtor filed the notice of appeal on June 19, 2006, June 18 having fallen on a Sunday. The notice of appeal was file-stamped as received on June 19, 2006; however the notice of appeal was not docketed until June 20, 2006. The Creditor has not challenged the timeliness of the appeal. Nonetheless, we feel the need to point these facts out due to the apparent tardiness of the appeal upon a quick review of the docket. We note that the appeal is timely because the notice was file-stamped as received on a timely basis, regardless of the docket entry.

The court's docket entry also indicates that the appeal relates only to the order denying the post-trial motion. However, the notice of appeal is broadly drafted and both parties have treated the appeal as relating to the merits of the judgment and not limited to the denial of the post-trial motion. Accordingly, we deem the appeal to relate to the merits of the exception of the debt from discharge and not limited to the denial of the post-trial motion as indicated on the trial court's docket sheet entry.

211 B.R. at 909. Due regard is given to the trial judge's opportunity to evaluate the credibility of the witnesses. Fed. R. Bankr. P. 8013; *Moen*, 238 B.R. at 790.

## DISCUSSION

Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a discharge does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. To prevail in a non-dischargeability action under Section 523(a)(2)(A), a creditor must prove by a preponderance of evidence that: (1) the debtor made a false representation; (2) at the time the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the representation having been made. *Field v. Mans*, 516 U.S. 59 (1995)(justifiable reliance); *Grogan v. Garner*, 498 U.S. 279 (1991)(burden of proof); *Moen*, 238 B.R. at 790(elements of proof under §523(a)(2)(A)).

The court did not make express findings of fact detailing each element of fraud. We therefore review the record as a whole to determine if each element was established by the Creditor at trial. We defer to the trial court's assessment of credibility. The trial court found the Debtor to be lacking credibility. Accordingly, we accept the Creditor's version of the events surrounding the failed sale and, where the Debtor's version is inconsistent, we disregard it.

The representation at issue is the Debtor's statement that he would sell the business to the Creditor for $70,000. The court found this to be a false statement. We disagree. After agreeing to the sale, the Debtor turned over the operation of the business to the Creditor. In addition he met with a lawyer and requested the lawyer

to draft appropriate sale documents. The Debtor's actions after agreeing to the sale are consistent with an intention to sell and do not evidence a lack of intention to follow through with the sale. Without a false statement, no fraud exists.

Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made. Again, the Debtor's actions in turning over the keys to the Creditor and meeting with an attorney to draft a sale agreement after agreeing to the sale do not support a finding that the Debtor knew he had no intention of selling the business at the time he agreed to do so for $70,000.

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. Here, the record is void of any evidence that the Debtor intended to deceive the Creditor.

Additionally, the Creditor must have justifiably relied on the representation for fraud to exist. Justification is a matter of the qualities and characteristics of the particular plaintiff and the circumstances of the particular case. *Field v. Mans*, 516 U.S. at 71(citing Restatement (Second) of Torts, §540 (1976)). The record is void of any evidence of justifiable reliance on the part of the Creditor. Yes, the Creditor took over the operation of the business and ran the store on a daily basis. He clearly believed he would be buying the store. However, he knew no sale agreement had been drafted or signed at that time and did not expect the sale to close until some time after he had assumed the responsibilities associated with operating the store. He could not have justifiably relied that the sale was certain at the time he delivered the funds to the Debtor.

The final element is loss. The Creditor clearly suffered damages of $15,000. However, the damages are not the proximate result of fraud. Rather, they are the result of a sloppy transaction which was never consummated. The Creditor gave the Debtor $15,000 without the benefit of a written sale agreement. He also accepted the

responsibility of operating the store without any ownership interest therein. By his own documentation, the Creditor acknowledged that the funds delivered were merely a down payment. After the sale fell apart, the Creditor further documented that the sale was never consummated and that he was entitled to the return of funds. Nowhere in his document does he mention anything related to fraud. Rather, he merely states that earnest money was delivered, the sale was not consummated, and that he is entitled to the repayment of the earnest money. The Creditor's own documentation establishes the breach of a contract to sell a business. It does not establish fraud. Debts arising out of contract breaches are not excepted from discharge in bankruptcy.

## CONCLUSION

The court erred in finding fraud in connection with this breach of contract case. Accordingly, we REVERSE the judgment and conclude that the Debtor's obligation to the Creditor is not excepted from discharge.

8